FILED _____ RECEIVED
ENTERED _____ SERVED ON
COUNSEL/PARTIES OF RECORD

AUG 02 2011

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY: _____ DEPUTY

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

STEVE MICHAEL COX,

    Plaintiff,

v.

JAMES BENEDETTI, et al.,

    Defendants.

3:08-cv-00502-LRH-VPC

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**

August 2, 2011

    This Report and Recommendation is made to the Honorable Larry R. Hicks, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. There are several related motions before the court.[1] Defendants filed a motion for summary judgment (#58),[2] plaintiff opposed (#95), and defendants replied (#103). Plaintiff filed a "motion to 'strike!' defendant's [sic] use of plaintiff's (11-4-2010's) oral deposition without 'corrections'" (#93); defendants opposed (#98), and plaintiff did not reply. Plaintiff also filed a "motion for Rule 11's [sic] sanction - penalties - for 'obstruction of justice/contempt of court's orders (#87)' by ESP/Atty. Gen. Office officials, et al." (#97). Defendants opposed (#101) and plaintiff did not reply. The following Report and Recommendation is based upon the court's thorough review of the motions and record.

## I. HISTORY & PROCEDURAL BACKGROUND

    Plaintiff Steve Michael Cox ("plaintiff"), a *pro se* inmate, is currently incarcerated at Ely State Prison ("ESP") in the custody of the Nevada Department of Corrections ("NDOC") (#95). Plaintiff brings his first amended complaint pursuant to 42 U.S.C. § 1983, alleging that prison officials deprived him of access to his legal property and failed to provide him with legal envelopes, violating his First and Fourteenth Amendment rights (#11). Plaintiff further claims that defendants

---

[1] The court addresses plaintiff's motion for copies (#94) in a separate minute order (#104).

[2] Refers to the court's docket numbers.

were deliberately indifferent to his medical needs in violation of the Eighth Amendment. *Id.* Plaintiff names as defendants J. Benedetti, T.Corda, J. Peery, J. Brackbill, Dr. Bannister, G. Cox, SC/O Vest, SC/O Brown, SC/O Carroll, D. Helling, and L. Bagwell. *Id.* The court screened plaintiff's complaint pursuant to 28 U.S.C. § 1915A and allowed plaintiff's First Amendment access to the courts, Fourteenth Amendment property rights, and Eighth Amendment deliberate indifference claims to proceed (#10).

In count I of his complaint, plaintiff explains that on August 2, 2009, NDOC moved him from ESP to Nevada State Prison ("NSP") to facilitate his participation in proceedings for case 3:03-cv-00651-PMP-VPC (#11, p. 4). While he was housed at NSP awaiting the date of his settlement conference, defendants in that matter served him with their motion to dismiss count five of his complaint for failure to exhaust his administrative remedies on August 17, 2007. *Id.* at 6. Plaintiff requested additional time to oppose the motion and the court granted him until September 18, 2007. *Id.* Plaintiff claims that on August 28, 2007, "four (NSP) officials and 1-one medical staffer" raided his cell and removed some of his legal items. *Id.* Plaintiff further alleges that these officials assaulted him during the raid. *Id.* Plaintiff does not identify any named defendants who allegedly participated in the removal of his property or the assault. *Id.* Plaintiff claims that the removal of his legal property, "severely degraded/denied plaintiff's access to court and proper/vigorous prosecution of count V." *Id.* at 7.

On August 30, 2007, NSP officials moved plaintiff to Northern Nevada Correctional Center's ("NNCC") Mental Health Unit ("MHU") for evaluation. *Id.* at 8. Plaintiff believes NDOC ordered the transfer because he lost over twenty pounds, which he states was caused by "an anemic mental/physical health degrading condition." *Id.* During the time that NDOC housed plaintiff in NNCC's MHU and the closed custody medical unit, plaintiff did not have access to his legal files. *Id.* at 8-11. Plaintiff filed several grievances about his property, until he received his legal materials on September 8, 2007. *Id.* at 9-11. Plaintiff states that he filed a grievance on September 4, 2007, claiming that defendant Vest "refused to give plaintiff his legal property" because he was a mental health patient. *Id.* at 10. Plaintiff claims that defendant Vest told him that defendants Benedetti and Corda gave him the order to deny plaintiff access to his property. *Id.* Plaintiff also accuses

defendant Vest of lying on the grievance response by stating that he told defendant Corda that he gave plaintiff an opportunity to review his legal property, which plaintiff disputes. *Id.* Plaintiff accuses defendant Helling of signing off on this grievance denial. *Id.* Plaintiff further alleges that defendant Corda denied an emergency grievance; defendants Brown and Carroll refused to provide him with his property; and defendants Corda, Benedetti, and Bagwell all signed off on defendants Brown and Carroll's denial of his property. *Id.* at 11.

Once plaintiff received his property, he claims it took him two to three days "to organize - chronologically! his 200 to 300 (plus) pounds of: disarrayed, lost/damaged, destroyed, etc. legal materials." *Id.* at 12. Plaintiff believes that he "had no time to properly research/study critical law issues/cases to stop dismissal of case no. 03-0651, count V," due to not having his legal materials. *Id.* Plaintiff also claims that defendants violated Administrative Regulation ("AR") 711's mandate that inmates' property be returned within twenty-four or seventy-two hours. *Id.* at 9-10, 12.

In count two of plaintiff's complaint, he states that he sent a kite to defendant Corda requesting legal supplies. *Id.* at 13. Plaintiff explains that defendant Corda directed him to send such requests to the law library supervisor. *Id.* at 14. Plaintiff says that his request was not adequately addressed by the law library supervisor, but notes that at the time he received a one-month supply of legal materials, which he subsequently used. *Id.* Plaintiff later moved this court to obtain adequate legal supplies, which the court granted. *Id.* at 15. However, plaintiff still required envelopes, which he claims were not addressed in court's order granting him supplies. *Id.* Plaintiff complains that he filed a separate motion for envelopes, which the court did not address, nor did prison officials provide him with envelopes. *Id.* Plaintiff states that he filed motions in several other pending actions requesting adequate legal supplies, but asserts that all of the motions were denied or ignored and that this "correspondences [sic] used-up all of plaintiff's legal (NSF) supplies." *Id.* Plaintiff filed a grievance, which he states defendants Benedetti, Corda, and Cox denied. *Id.* Plaintiff explains that he resorted to using nonlegal envelopes to mail his legal documents and that, as a result, defendants Benedetti, Corda, and Peery ordered his mail be returned to him. *Id.* at 16. Plaintiff filed another grievance, which defendants Benedetti, Corda, and Peery again denied. *Id.* Plaintiff also complains that defendants Benedetti and Cox denied other emergency and informal

grievances related to the issue. *Id.* Plaintiff believes these acts denied his right to access to the court. *Id.* at 15-16.

In count three, plaintiff alleges that defendants refused to respond to his requests for medical treatment of the injuries he sustained during the cell raid on August 28, 2007. *Id.* at 18. Specifically, plaintiff complains that defendants Peery and Benedetti did not approve his requests for medical examination and medication. *Id.* at 18. Further defendants "Peery, Brackbill, Bannister, et al." denied plaintiff's grievances requesting medical treatment. *Id.* at 19. Plaintiff states that after these denials of his grievances and kites, he learned of the severity of his injuries in a medical exam conducted in November or December of 2007. *Id.* at 19. At this exam plaintiff claims that Dr. Carter, a physician at ESP, informed him that he has permanent muscle and nerve damage from an assault that occurred at ESP on October 4, 2007;[3] and related to the raid on his cell at NSP. *Id.* at 19.

Defendants filed the instant motion seeking summary judgment on plaintiff's claims (#58). Defendants first argue that plaintiff was not denied access to the court because an inmate must prove that he suffered an "actual injury," such as the inability to file a claim or meet a deadline. *Id.* at 10 (citing *Lewis v. Casey*, 518 U.S. 348 (1996)). "The right to access the courts is only a right to bring complaints to the federal court and not a right to discover such claims or to litigate them effectively once filed with a court." *Id.* (citing *Lewis*, 518 U.S. at 354-55). Defendants explain that plaintiff did not suffer an actual injury related to his opposition filing in case 3:03-cv-00651-PMP-VPC because the case resulted in a grant of summary judgment, which plaintiff appealed to the Ninth Circuit, that was reversed and remanded. *Id.* at 11. Ultimately, the case concluded with a jury verdict for defendants. *Id.* Defendants also note that plaintiff does not allege that he was denied access to the courts by the lack of access to his legal materials or to appropriate envelopes, rather he claims that he was not as effective or vigorous in his litigation as he could have been. *Id.*

With respect to plaintiff's Eighth Amendment claim, defendants assert that plaintiff has received extensive medical care and attach his medical records to document these claims. *Id.* at 12.

---

[3] This alleged assault is not the topic of any of plaintiff's claims in the present matter.

4

They state that "at best, [plaintiff] merely has a difference of opinion concerning the best course of treatment." *Id.* Defendants also claim that if the court should find that there are potential violations of plaintiff's First or Eighth Amendment rights, defendants are entitled to qualified immunity as they acted reasonably at all times with respect to plaintiff's property and his medical needs. *Id.* at 13.

Plaintiff sues defendants in their official and individual capacities (#11, p. 20). Defendants argue that suits against state employees in their official capacities are barred as a matter of law (#58, p. 14). Defendants also explain that defendants Corda, Benedetti, Helling, Cox, Peery, Brackbill, and Bannister did not personally participate in any alleged deprivations of plaintiff's constitutional rights. *Id.* at 14. "At best, the foregoing Defendants only conduct was providing responses to [plaintiff's] grievances." *Id.* As inmates do not have a right to a prison grievance process, there is no liability for these acts. *Id.* (citing *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993)).

Plaintiff filed his opposition to defendants' motion on June 9, 2011, requesting that the court consider the filing to be a "preliminary" opposition and asking the court to grant him additional time to "file a more 'correct!' and 'proper!'" opposition (#95, pp. 1-2). Plaintiff states that he needs such accommodation because he does not have access to adequate legal supplies. *Id.* In addition to the request plaintiff made in his opposition, he filed several motions for an extension of time to oppose defendants' summary judgment motion (#'s 62, 79, 89, 92). On May 23, 2011, the court granted plaintiff's second motion for an extension of time and granted in part his motion for adequate legal supplies (#87). The court ordered defendants to direct ESP officials to provide plaintiff with legal supplies; however, after plaintiff filed his third request for an extension, which the court denied, defendants notified the court that they failed to timely comply with the court's order resulting in an eight-day delay in plaintiff receiving legal supplies (#91). Therefore, the court granted plaintiff's fourth request for additional time (#92) and the request he made in his "preliminary" opposition (#95), allowing plaintiff to file a concise supplement to his opposition by June 30, 2011 (#96). Plaintiff chose not file a supplement.

Plaintiff's opposition largely restates his complaint (#95). Plaintiff argues that the court should apply the legal standard for a motion to dismiss for failure to state a claim, although he does not explain why he believes this standard should be applied. *Id.* at 5-7. Plaintiff also believes that

5

he suffered an actual injury with respect to defendants' alleged denial of his legal papers and supplies because he spent time working on the appeal for 3:03-cv-00651-PMP-VPC. *Id.* at 15. Plaintiff believes he "mostly likely could have won/settle[d] the case" had he been provided his legal papers. *Id.* To support his opposition, plaintiff attaches his complaint for this matter; his deposition testimony with corrections; defendants' opposition to plaintiff's second motion to compel discovery and exhibits; three affidavits, which restate portions of plaintiff's complaint and opposition; Deputy Director James Cox's job duties and oath of office; several single pages of ARs and Institutional Procedures; and copies of grievance and inmate request forms (#'s 95, 95-1, 95-2).

Defendants note in their reply that plaintiff "disingenuously attempts to characterize Defendants' Motion for Summary Judgement as a motion to dismiss for failure to state a claim," a tactic plaintiff used in previous litigation (#103, p. 2). Defendants further argue that plaintiff failed to introduce evidence to support his claims, nor has he demonstrated that there are outstanding issues of material fact. *Id.* at 3. Finally, defendants comment on the large number of exhibits plaintiff submitted with his opposition and argue that "some . . . do not appear to have any relation to his claims and/or do not stand for the proposition(s) that he believes they do, and/or [the] exhibits actually support Defendants' arguments." *Id.* at 4.

The court notes that the plaintiff is proceeding *pro se*. "In civil rights cases where the plaintiff appears *pro se*, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988); *see also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

## II. DISCUSSION & ANALYSIS

**A.     Discussion**

**1.     Summary Judgment Standard**

Summary judgment allows courts to avoid unnecessary trials where no material factual disputes exist. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court grants summary judgment if no genuine issues of material fact remain in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view all evidence and any inferences arising from the evidence in the light most favorable to the

1  nonmoving party. *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). However, the Supreme
2  Court has noted:

> [W]e must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530 (2006). Where reasonable minds could differ on the material facts at issue, however, summary judgment should not be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

The moving party bears the burden of presenting authenticated evidence to demonstrate the absence of any genuine issue of material fact for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see Orr. v. Bank of America*, 285 F.3d 764, 773-74 (9th Cir. 2002) (articulating the standard for authentication of evidence on a motion for summary judgment). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson*, 477 U.S. at 248. Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

On summary judgment the court is not to weigh the evidence or determine the truth of the matters asserted but must only determine whether there is a genuine issue of material fact that must be resolved by trial. *See Summers v. A. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997). Nonetheless, in order for any factual dispute to be genuine, there must be enough doubt for a reasonable trier of fact to find for the plaintiff in order to defeat a defendant's summary judgment motion. *See* Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

**B.    Analysis**

As an initial matter, plaintiff requests that "this motion be based on Fed. R. Civ. P. 12(c)" and presents the legal standard for motions to dismiss for failure to state a claim (#95, p. 2). Plaintiff does not explain why he believes the court should construe defendants' summary judgment

motion as a motion to dismiss. *Id.* Defendants' summary judgment motion is appropriate at this point in the litigation, *see* Fed. R. Civ. P 56(a)-(b), and plaintiff presents no argument to the contrary; therefore, the court declines to apply the motion to dismiss standard requested by plaintiff.

### 1. Defendants

"Liability under [§] 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for the constitutional violations of . . . subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. There is no respondeat superior liability under [§] 1983." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted); *see also Hydrick v. Hunter*, 500 F.3d 978, 988 (9th Cir. 2007); *Ortez v. Washington Cnty., State of Or.*, 88 F.3d 804, 809 (9th Cir. 1996) (concluding it is proper to dismiss where there are no allegations of knowledge of or participation in an alleged violation). Additionally, inmates are not entitled to a specific grievance procedure. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)), *cert. denied* 541 U.S. 1063 (2004); *see also Lomolt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002); *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999) (holding that prison official's denial of a grievance cannot be grounds for liability under section 1983).

Plaintiff sues defendants J. Benedetti, T. Corda, J. Peery, J. Brackbill, Dr. Bannister, G. Cox, SC/O Vest, SC/O Brown, SC/O Carroll, D. Helling, and L. Bagwell (#11). Plaintiff alleges that defendants Helling, Corda, Benedetti, and Bagwell all denied grievances in connection with the deprivation of plaintiff's legal property while he was housed in NNCC's MHU. *Id.* at 10-11. Likewise, plaintiff alleges that defendants Benedetti, Corda, Peery, and Cox denied grievances in connection with the provision of legal supplies. *Id.* at 15-16. Finally, plaintiff makes similar claims for alleged Eighth Amendment violations, wherein he claims that defendants Peery, Brackbill, and Banniester denied his grievances and requests for medical services. *Id.* at 18-19.

Other than copies of grievance forms, which confirm that plaintiff's grievances were denied, plaintiff does not offer any evidence to suggest that defendants Benedetti, Corda, Peery, Breackbill, Bannister, Cox, Helling, or Bagwell engaged in any specific acts that violated plaintiff's constitutional rights or failed to investigate any of their employees' acts that may have violated

1  plaintiff's constitutional rights. Rather, plaintiff's claims stem from his belief that these defendants
2  erroneously denied his grievances. However, because a prison official's review and denial of
3  grievances cannot serve as the sole basis for liability under Section 1983 and there is no supervisory
4  liability under Section 1983, plaintiff's claims fail as a matter of law.

5  Therefore, the court recommends that summary judgment be granted in favor of defendants
6  Benedetti, Corda, Peery, Breackbill, Bannister, Cox, Helling, and Bagwell due to their lack of
7  personal participation in plaintiff's alleged constitutional violations.

**2.  Claims**

    **a.  First Amendment Access to Courts**

Prisoners have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 346 (1996); *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *limited in part on other grounds by Lewis*, 518 U.S. at 354; *Ching v. Lewis*, 895 F.2d 608, 609 (9th Cir. 1990). However, the right of access to the courts is only a right to bring direct criminal appeals, a *habeas corpus* petition, or civil rights complaint. *See Lewis*, 518 U.S. at 354-55; *Cornett v. Donovan*, 51 F.3d 894, 898 (9th Cir. 1995). "[T]he [U.S.] Supreme Court has clearly stated that the constitutional right of access requires a state to provide a law library or legal assistance only during the pleading stage of a *habeas* or civil rights action." *Cornett*, 51 F.3d at 898-99 (discussing at length the U.S. Supreme Court's decisions in *Bounds* and *Wolff v. McDonnell*, 418 U.S. 539 (1974), in concluding that the right of access requires that the state provide assistance through the pleading stage only).

To establish a violation of the right to access the courts, a prisoner must establish that he or she suffered an actual injury, a jurisdictional requirement that flows from the standing doctrine and may not be waived. *See Lewis*, 518 U.S. at 348 (citation omitted); *see also Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (explaining that "[f]ailure to show that a non-frivolous legal claim ha[s] been frustrated is fatal" to a claim for denial of access to courts) (citing *Lewis*, 518 U.S. at 353 n.4)). Actual injury is defined as actual prejudice with respect to contemplated or existing litigation, such as inability to meet a filing deadline or present a claim. *Id.* at 348 (citation and internal quotations omitted).

Here, plaintiff claims that defendants violated his right to access the courts by denying him

1  timely access to his legal materials so that he could prepare and file an opposition to a motion to
2  dismiss. Plaintiff also believes defendants denied his right to access the court by failing to provide
3  him with legal mail envelopes. However, as defendants note, plaintiff was not prevented from filing
4  his opposition to the motion to dismiss, nor does he claim that his alleged lack of appropriate legal
5  envelopes prevented him from filing claims or meeting deadlines. Rather, plaintiff states in his
6  deposition testimony that defendants' acts did not prevent him from accessing the courts, but instead
7  "degraded [his] ability to file the best possible motions [he] can . . . [and to] effectively advocate
8  [his] position" (Ex. D, #58-2, p. 36). With respect to plaintiff's access to legal envelopes, he states
9  in his deposition:

> I can't say that any particular damages occurred so far as a case being denied or a case being dismissed because of what happened. But what I'm saying now, is, because the mail wasn't sent out, it further backed up all the other cases and it just made it that much more difficult for me to research each case that I needed to research and give it my attention in order to vigorously prosecute my claim.

*Id.* at 37.

Plaintiff's perceived inability to vigorously prosecute his claims does not rise to the level of an "actual injury," which is required to state a claim for violation of his right to access the court. In fact, as defendants point out and the court knows from experience, plaintiff has successfully filed numerous, lengthy pleadings and motions in this case and many others, belying his claims that prison officials interfered with his efforts to bring alleged constitutional violations to the attention of the court. As plaintiff fails to allege facts to demonstrate that he suffered an actual injury, such as the inability to file a claim or to meet a court deadline, the court recommends that defendants' motion for summary judgment on plaintiff's First Amendment access to courts claims be granted.

          **b.**     **Fourteenth Amendment - Right to Property**

The Due Process Clause of the Fourteenth Amendment protects individuals from arbitrary government action by prohibiting states from depriving people of "life, liberty, or property without due process of law." U.S. Const. amend. XIV. Often due process claims for deprivation of property arise from the allegation that a prison official engaged in an unauthorized or random act of destruction or deprivation of an inmate's property. *Parratt v. Taylor*, 451 U.S. 527, 537 (1981); *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). However, the claim may instead relate to the

assertion that prison officials deprived an inmate of his property pursuant to a regulation that does not serve a legitimate penological interest. *Hudson*, 468 U.S. at 532 n.13; *Quick v. Jones*, 754 F.2d 1521, 1523-24 (9th Cir. 1985).

Under Supreme Court rulings in *Parratt* and *Hudson*, negligent or unauthorized, intentional deprivations of property do not give rise to a due process claim so long as the state provides an adequate post-deprivation remedy, such as the availability of a common-law state tort action against a private prison employee. *Parratt*, 451 U.S. at 537-38; *Hudson*, 468 U.S. at 533. On the other hand, if the deprivation of property is carried out pursuant to an established state procedure or regulation, then the plaintiff can state a claim under the Due Process Clause. *Hudson*, 468 U.S. at 532 n.13; *Quick*, 754 F.2d at 1523-24. Authorized property deprivations are permissible if conducted pursuant to a regulation that is reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89 (1987).

The court notes that defendants did not directly address plaintiff's Fourteenth Amendment claim for deprivation of his property in their summary judgment briefing. However, based upon the facts before the court, it recommends that plaintiff's due process claims be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), which allows the court to dismiss claims "at any time" if it determines that the cause of action filed by the inmate fails to state a claim on which relief may be granted.

Plaintiff argues that prison officials raided his cell and removed some of his legal property (#11, p. 6). Plaintiff further asserts that defendants Vest, Brown, and Carroll denied plaintiff access to his property, claiming that these acts violated time frames outlined in AR 711 and ESP IP 7.10. *Id.* at 9-12; Plaintiff's Opposition to Defendants' Motion for Summary Judgment, #95, p. 9. Based on these facts, the court finds that plaintiff alleges that defendants engaged in unauthorized deprivation of his property in violation of established prison regulations and procedures. Such deprivations do not give rise to liability under the Due Process Clause when there is an available state common-law tort remedy. Plaintiff has such a remedy under Nevada Revised Statute 209.243; therefore, he may not sue under Section 1983 for violation of his due process rights for the loss of property.

The court also notes that plaintiff misunderstands the provisions of AR 711. Under the

11

regulation, an inmate transferring to another facility for court or medical reasons is entitled to bring legal work with him (Ex. A, Attch. 6, #58-1, p. 35). The only exception to this rule is for inmates who are transferred for less than a seventy-two hour period. *Id.* Plaintiff mistakenly reads this provision to state that he should have received his legal property within seventy-two hours of transfer. That is plainly not the meaning of the regulation. Similarly, plaintiff asserts that defendants' conduct violates ESP IP 7.10, but ESP's institutional procedures do not apply to other institutions such as NSP and NNCC where the acts giving rise to plaintiff's complaint occurred.

Therefore, the court recommends that plaintiff's Fourteenth Amendment claims for deprivation of his legal property be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), as plaintiff can allege no set of facts under which the purported unauthorized deprivation of his property states a due process claim. The court cautions defendants to address all claims, which are permitted to proceed in the screening order, in their motions for summary judgment.

### c. Deliberate Indifference to Serious Medical Needs

A prisoner's claim of inadequate medical care arises under the Eighth Amendment. The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). To prevail on an action alleging cruel and unusual punishment, a plaintiff's case must satisfy an objective standard – that the deprivation was serious enough to amount to cruel and unusual punishment, and a subjective standard – deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Wilson v. Seiter*, 501 U.S. 294, 297-304 (1991). A prison official violates the Eighth Amendment when he responds with deliberate indifference to an inmate's serious medical need. *Farmer*, 511 U.S. at 834.

The objective requirement of a "serious medical need" is met if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). In this circuit, examples of serious medical needs include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily

activities; or the existence of chronic and substantial pain." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citations omitted).

The subjective standard of deliberate indifference requires "more than ordinary lack of due care for the prisoner's interests or safety." *Farmer*, 511 U.S. at 835, (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)). The requisite state of mind lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Id.* at 836. To prove deliberate indifference, plaintiff must demonstrate that prison staff denied, delayed, or intentionally interfered with medical treatment or that the way prison staff provided medical care indicates deliberate indifference, and that plaintiff sustained damages as a result of such conduct. *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988). Prison medical staff do not violate the Eighth Amendment simply because their opinion concerning medical treatment conflicts with the opinion of the inmate-patient. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Moreover, "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference." *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam); *accord McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992).

Further, a difference of opinion between medical professionals concerning the appropriate course of treatment generally does not amount to deliberate indifference to serious medical needs. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). However, a prisoner can establish that such a difference of opinion amounted to deliberate indifference where "the course of treatment the doctors chose was medically unacceptable under the circumstances," and such a course of treatment was chosen "in conscious disregard of an excessive risk to the prisoner's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Williams v. Vincent*, 508 F.2d 541, 543-44 (2d Cir. 1974) (holding that inmate stated a claim for deliberate indifference where prison medical staff threw away the inmate's severed ear, told the inmate that 'he did not need [it],' and made no effort to reattach it)).

Plaintiff's Eighth Amendment claims arise from his allegation that defendants failed to provide him with adequate medical treatment following a raid on his cell, during which plaintiff claims unnamed prison officials and a medical staff person beat him. First, the court has already

13

1  recommended summary judgment in favor of plaintiff's claims that defendants Peery, Benedetti,
2  Brackbill, and Bannister denied his grievances. Plaintiff does not name any other defendants in
3  connection with his Eighth Amendment claims so summary judgment in favor of these defendants
4  effectively results in summary judgment on plaintiff's deliberate indifference claims. However, even
5  if plaintiff did name other defendants in connection with the alleged failure to treat his injuries in
6  connection with the raid on his cell, the court would still recommend summary judgment in favor
7  of defendants.

8      Plaintiff claims a cell raid and assault took place on August 28, 2007 and that he did not
9  receive treatment for injuries sustained during this event. Defendants submit plaintiff's medical
10 records for the period from August 9, 2007, through September 24, 2008 (Ex. B, Attch. 1, #64-1
11 (*sealed*)). The medical records reveal that prior to the "raid," plaintiff told medical staff he could
12 not eat because he was anemic, which was caused by a mental disorder. *Id.* at 5. He also refused
13 showers stating that he feared he would slip and fall in the shower. *Id.* The medical record for
14 August 28, 2007, states that plaintiff refused to comply with the nurse's effort to weigh him. *Id.* at
15 6. Officials searched plaintiff's cell while he was seated in the hallway. *Id.* After the search, NDOC
16 officials returned plaintiff to his cell and ordered him to weigh himself. *Id.* Plaintiff did not eat in
17 the days following this encounter, and on August 30, 2007, medical staff transferred him to the MHU
18 at NNCC. *Id.* After the alleged assault on August 28, 2007, there are approximately thirty-five
19 entries in plaintiff's medical record for the remainder of 2007. *Id.* at 6-12. These entries describe
20 in detail the medical care plaintiff received including numerous assessments, medication, a walker,
21 and appointments with a neurologist. *Id.*

22     The court finds that plaintiff received adequate medical care during the time about which he
23 complains, as evidenced by the ongoing, regular attention he received from medical staff. Plaintiff's
24 allegations that they refused to provide him with care for his alleged injuries or related medical
25 condition is not supported by evidence and, in fact, is directly contradicted by plaintiff's detailed
26 medical records. At most, plaintiff's allegations reflect his difference of opinion about the medical
27 care he received, which is not sufficient to state an Eighth Amendment claim.

28     For the reasons articulated above, the court recommends that summary judgment be granted

in favor of defendants for plaintiff's Eighth Amendment deliberate indifference claims.

### 3. Plaintiff's Nondispositive Motions

#### a. Motion to Strike

Plaintiff filed a motion to strike defendants' use of his deposition testimony in their motion for summary judgment without attaching his written corrections (#93). Defendants opposed the motion, noting that they relied on testimony in their summary judgment motion that is unchanged by plaintiff's corrections and also commenting that plaintiff submitted a copy of his corrections with his opposition to defendants' motion for summary judgment, "rendering any deficiency (if any there was), moot" (#98, p. 3).

The court recommends that plaintiff's motion to strike (#93) be denied as moot in light of the court's recommendation that all claims in the case be decided on summary judgment or dismissed pursuant to 28 U.S.C. § 1915(e).

#### b. Motion for Rule 11 Sanctions

Plaintiff filed a motion for Rule 11 sanctions in connection with defendants' eight-day delay in directing ESP to comply with the court's May 23, 2011 order to provide plaintiff with legal supplies (#97). Defendants opposed the motion, stating the Rule 11 sanctions are inapplicable, that they acted with candor when they notified the court of the delay, and that the court granted plaintiff additional time to file a supplementary brief thereby alleviating any possible harm caused to plaintiff (#101, p. 3-4).

The court recommends that plaintiff's motion for sanctions (#97) be denied, as plaintiff was not harmed by the eight-day delay. In fact, the court granted plaintiff additional time to file a supplement to his opposition, which he declined to do.

### III. CONCLUSION

Based on the foregoing and for good cause appearing, the court concludes that defendants met their burden of proving that there are no genuine issues of material fact for trial. Therefore, the court recommends that defendants' motion for summary judgment (#58) be **GRANTED** in part for plaintiff's claims against defendants Benedetti, Corda, Peery, Breackbill, Bannister, Cox, Helling, and Bagwell; plaintiff's First Amendment access to the court claims; and plaintiff's Eighth

Amendment deliberate indifference claims. The court further recommends that plaintiff's Fourteenth Amendment claim for deprivation of property be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e), for failure to state a claim upon which relief may be granted. Finally, the court recommends that plaintiff's motions to strike (#93) and for sanctions (#97) be **DENIED**. The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## IV.  RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that defendants' summary judgment motion (#58) be **GRANTED** in part for plaintiff's claims against defendants Benedetti, Corda, Peery, Breackbill, Bannister, Cox, Helling, and Bagwell; plaintiff's First Amendment access to the court claims; and plaintiff's Eighth Amendment deliberate indifference claims.

**IT IS FURTHER RECOMMENDED** that plaintiff's Fourteenth Amendment claim for deprivation of property be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e), for failure to state a claim upon which relief may be granted.

**IT IS FURTHER RECOMMENDED** that plaintiff's motions to strike (#93) and for sanctions (#97) be **DENIED**.

**DATED:** August 2, 2011.

UNITED STATES MAGISTRATE JUDGE